**Jonathan M. Gould**

7357 Providence Dr.
Edwardsville, Il. 62025
618-980-0205 cell
gouldj77@icloud.com

October 3, 2021

Mr. Douglas J. McCarron, General President
United Brotherhood of Carpenters and Joiners of America (UBC)
101 Constitution Ave. NW
Washington D.C. 20001

**Re: Suspension of Charter/Supervision of Local/Trusteeship LM15/Demand for Forensic Accounting**

Dear Mr. McCarron:

     The recent actions taken by the UBC to remove Mr. Al Bond as Executive Secretary-Treasurer (EST), in addition to four other officers, should have occurred years ago. The UBC has been provided with several chances to end illegal and immoral actions taken by Mr. Bond and Bond's predecessor, Terry Nelson. Those chances included the audio recording of a speech from August of 2014. In this speech, various ways in which Council leaders were violating federal laws, the UBC Constitution, By-Laws, and St. Louis-Kansas City Carpenters' Regional Council (CRC) spending policies. The speech included supporting documentation, including a multi-page letter hi-lighting illegal spending, non-collection of benefits, and other violations of the law and/or public policy. Much to our surprise, and the surprise of many other members, the UBC failed to act.

     Similarly, when financial maleficence was uncovered inside the former Kansas City Carpenters' Regional Council, the UBC failed to protect the member's best interests. Rather than old former EST Terry Davis responsible, the UBC chose to merge the Kansas City Regional Council of Carpenters into the Carpenters' District Council of Greater St. Louis and Vicinity. This action handed millions of

dollars to another EST who viewed union funds as their own. The leadership of the newly formed Council and the UBC touted this merger as an attempt to "better use resources, improve market share, and reduce costs." The merger was pitched under this fabricated PR statement to twenty thousand plus members, thousands of signatory contractors, and the local media. However, EST Bond later signed an affidavit that officially refutes those statements. Mr. Bond's affidavit says that you, acting in your official title role as General President, removed Terry Davis from office due to alleged demands made by Davis that appointed Business Agents provide him with financial kickbacks. Mr. McCarron, Jon Gould was employed by the CRC at the time of the merger and knows that this demand was not simply a rumor, but a fact. Gould sat in CRC Executive Board meetings in which the scheme was discussed. The kickback story was accurate. So authentic, that the newly formed Council repaid numerous Business Agents with union funds. Why didn't the UBC or Council require Davis to repay these monies? ***Attached is a copy of Bond's signed and dated affidavit for your review.***

Fast forward to today, and the UBC is once again attempting to hide the financial crimes and poor behavior of an EST under the guise of a simple merger. A "merger that will allow for better use of resources and serve to increase market share." Regardless of the potential under the leadership of EST Gary Perinar, we know this PR statement to be a complete fabrication. The merger is the result of actions taken by Al Bond during his tenure as EST. Numerous employees of the CRC had already leaked the secret details surrounding Mr. Bond's untimely departure; a letter written to the UBC by an anonymous and recently discharged employee, included multiple allegations of impropriety committed by Al Bond. The real reasons for Bond's dismissal were confirmed to the media, some members, and former employees of the Council. Business Representatives in the Kansas City area sent text messages to CRC Delegates on the evening of September 26, 2021, stating that there were **no issues** on the **western side** of Missouri; adding that Bond and others had been removed from office, and a key sentence for the purposes of this letter, **"that the UBC was overseeing operations in Kansas City and St. Louis."**

Employees have **confirmed** that Mr. Bond was removed for financial misappropriation, hostile work environment, and sexual harassment. Furthermore, the CRC and the UBC are currently being sued in the Eastern District of Missouri's Federal Court for ignoring hostile working conditions and the repeated sexual harassment of female employees by Al Bond and others. Prior to

the current lawsuit, unknown Council leaders sexual harassed a female employee at a CRC event. Their harassment ultimately resulted in a confidential settlement being paid to a CRC staffer by the Council, not the actual offenders. Not surprisingly, the Council hid this settlement by not reporting it on the corresponding LM2 report. The practice of excluding items from the CRC's LM2 reports is a common occurrence. The LM2 filed on September 27, 2021, is missing numerous expenses and receipts. ***The current lawsuit in Missouri is not attached, as we know the UBC has been served and made an appearance in the case.***

In an on-going pattern of sexual harassment and border-line battery, Mr. Bond was caught taking unsolicited photos of a female bar tender's backside and presumably her underwear in November of 2019. When caught, Bond threatened the life of the individuals attempting to protect the young woman's dignity. The UBC and CRC were made aware of this published report immediately following discovery of the review post made on the CRC's Facebook page. Copies of the Facebook review were reposted on Facebook, Linkedin, and Twitter. Once again, the UBC failed to act. ***Please see the attached claims made by a young woman who witnessed Bond's behaviors. Her claims were not refuted by Mr. Bond or the Council; nor did anyone demand a retraction. Bond simply had the review section of the CRC's Facebook page removed, and with it, the negative post and his sexual harassment/battery were deleted.***

Let us now address the financial issues that have occurred under Mr. Bond's leadership. The majority of which were officially addressed by a failed Office of Labor Management Standards Compliance Audit (OLMS) published in 2020, as well as the depositions of CRC Controller Juli Laramie and staffer, Vicki Andrews. Additionally, as part of a 2016 whistleblower lawsuit filed against the Council, and now former ESTs' Terry Nelson and Al Bond, Mr. Gould was able to review CRC financials, credit card receipts and statements, expense reports, and internal communications. Confirmation of illegal spending, reporting, and other items is everywhere.

Having witnessed numerous violations of the law during my employment by the Council, Jon Gould was intimately aware of multiple schemes used by CRC leadership to convert union assets for their personal benefit and/or gain. Many of these crimes were reported to the Illinois Attorney General's office in 2008, Council leaders throughout Gould's employment (2006-2014), the UBC, the St. Louis-Kansas City OLMS office, the Special Investigation office at the Internal Revenue Service, the Department of Labor, the DOL's Solicitor General, and the

Federal Bureau of Investigation. There have been so many items missed by the CRC's preferred "independent" auditors that we dare say these firms may have been knowingly assisting in the coverup of financial crimes. Some of the items addressed and confirmed over the years, include the following examples, but are not limited in scope:

- Paying to fly spouses and guests to Conventions and Conferences (despite this being against CRC policy for at least 27 years under Controller Laramie)
- Paying expenses for spouses, guests, and others at Conventions and Conferences
- Paying for unlimited alcohol purchases at Conventions and Conferences
- Paying for non-business-related meals, alcohol, concerts, musicals, sporting events, clothing, massages, golf, and incidentals
- Paying and/or granting reimbursements to CRC employees via "petty cash" that didn't meet minimum reporting requirements
- Increasing salaries via an illegal vehicle policy that serves(d) to fraudulently inflate the UBC pensions of the Council's hi-ranking officials
- Increasing Mr. Bond's salary by roughly $85,000 in May of 2017 by tricking or coercing CRC Delegates into approving the increase due to a demand supposedly made by UBC Mid-Western District Vice President David Tharp. The UBC confirmed to the DOL/OLMS that no such request was made and that nothing was known about the "purported" demand made by the UBC and Mr. Tharp. **The UBC ignoring Bond's wage theft through deception has netted him over $320,000 since that time.**
- Income tax evasion by not reporting non-business-related perks/benefits as income on employee W-2s' (confirmed by Controller Laramie)

The described conduct violates 29 U.S.C. § 501(c), which makes it a federal crime for a union officer to embezzle, steal, or unlawfully convert union funds for his or her own use. Moreover, the described acts directly violate numerous Council policies, tax law, the National Labor Relations Act (NLRA), and the Labor Management Reporting-Disclosure Act's (LMRDA), among others.

- "Reimbursements will only be made for actual expenses properly incurred that are related to Council business. **All expenses should be reasonable (not unlimited as described in the Deposition of Vicki Andrews) and properly documented. Each expense (including meals) must be supported by an itemized receipt, the name of the person and/or persons, and the event or purpose of the expense,**"

- **"Business entertainment expense is reimbursable only if it is incurred for legitimate union purposes"** (taking your spouse to dinner and show is not a legitimate union business expense)

The UBC has allowed individuals who occupy positions of trust to improperly benefit at the expense of Council members throughout Southern Illinois, Kansas, and Missouri since at minimum 2010; 29 U.S.C. § 501(c) describes criminal penalties, including jail time, for breach of trust, embezzlement, and conversion of union funds. As do violations of tax law, the NLRA and LMRDA, the Racketeering Influenced Corrupt Organization Act, and many more.

Per Deposition testimony, the misappropriation described took place under Terry Nelson, and continued under Mr. Bond. According to policy, "the EST is responsible for reviewing expense reports submitted by employees." By allowing and participating in misconduct, Mr. Nelson and Mr. Bond breached their fiduciary responsibilities owed to the Council and its members. By ignoring these crimes, the UBC has breached its fiduciary duty to the entire Brotherhood.

As a result of said violation of duty, embezzlement, and other violations, the Council, UBC, and their rank-and-file members have incurred significant damages in the form of lost funds and business opportunities. The UBC, Mr. Nelson, and Mr. Bond were aware of the activities, fraudulent misappropriation, and breach of fiduciary duty set forth herein. Unfortunately, everyone failed to act, despite repeated notice and demands to take corrective measures.

The continued avoidance of responsibility by the UBC and others has cost the CRC and UBC millions of dollars. We are privy to numerous "purported" schemes that Mr. Nelson, Bond, and others have used to line their respective pockets with union funds. These include kickbacks, non-reporting of personal relationships with Council employees, non-reporting of financial assistance made to firms holding personal connection to CRC leaders, improper loans, and political bribes. Many of the crimes listed throughout this letter are carbon-copies of crimes committed by leaders at the United Auto Workers (UAW). In fact, it was conveyed to Mr. Gould by an FBI Special Agent in August of 2020, that the Council was participating in frauds that were **INDENTICAL** to those committed by UAW leadership. Upon information and belief, it is quite "possible" that Mr. Bond was leading a corrupt organization, an organization that was then using union funds to cover up its' misdeeds.

We understand the UBC is under federal investigation in New Jersey. In fact, an accounting firm hand-picked by Mr. Bond to complete an obviously sham audit, Calibre CPA, was subpoenaed as part of this federal inquiry into UBC affairs. The probe of the UBC has apparently resulted from the fallout of another merger directed by the UBC. Due to LM2 and media reports, we are keenly aware that the UBC settled with this whistleblower in a what was presumably an effort to hide the individual's reporting of illegal actions within the union. However, the federal government had already taken notice, thus the current investigation.

The repeated failure of the UBC's leadership, numerous "independent" accounting firms, in-house professionals (CPAs, Lawyers, Compliance Officers) to identify and route out illegal acts is an embarrassment to the Brotherhood. In St. Louis-Kansas City alone, over $3 million dollars has been spent on labor law compliance dating back only a few years. Per numerous contacts with federal government regulatory agencies in St. Louis, there has been enormous failures made by negligent and/or potentially complicit firms and individuals tasked with holding Council and UBC leaders accountable. As such, the FBI invited Mr. Gould to start meeting with them in April of 2018. All told, Gould spent close to 40 hours over seven meetings discussing Al Bond, the UBC, political figures, developers, and potentially corrupt government employees. Their communications continued via telephone, email, and text. Point being, the UBC will **NOT** be able to cover up the real reasons for removing Al Bond from office. Nor will the UBC be able to skirt an investigation of the CRC's financials.

Due to these reasons, and many more, as a dues-paying members of the UBC and the St. Louis-Kansas City Carpenters' Regional Council, and on behalf of the twenty-two thousand odd members of the Council, we demand that you, the Chicago Regional Council of Carpenters', the UBC, EST Gary Perinar, and the governing board/officers take the following actions against yourselves and/or the Council.

1. Sue Mr. Bond to recover damages (as Mr. Nelson is now deceased)
2. Secure a forensic accounting of the 5 years Mr. Bond lead the CRC (said accounting shall not be completed by any firms associated with the UBC, CRC, Chicago Regional Council, or any other UBC controlled entity; and members will be allowed to participate as witnesses; as well as participate in the selection of independent auditors who we trust). This includes forensic audits of all known and unknown funds controlled by the Council. Including training trust funds, political action funds, pension funds, health

and wellness funds, vacation funds, market recovery funds, general funds, and any other funds not known to the membership.
3. Show all members audit reports, audit results, shared audit documents, and communications with "independent" auditors RSM, and Calibre CPA. Not to exclude the same items as they relate to the OLMS audit started in early 2018 and finally published in January of 2020
4. Cease the merger of the St. Louis-Kansas City Carpenters' Regional Council into the Chicago Regional Council of Carpenters
5. Declare an official Trusteeship of the St. Louis-Kansas City Carpenters' Regional Council and file the required LM15 with the federal government. The actions taken by the UBC over the last few days requires that a Trusteeship be issued per **305.005** (Suspension of Charter) and **305.105** (Supervision of Local). **Control of the financial affairs was in fact suspended and the UBC stated supervision and control of STL-KC-CRC per Business Agents, employees, and published statements**
6. Retain all records, financials, receipts, communications, audits, check books, credit card statements, expense reports, petty cash logs, and **ALL** STL-KC-CRC papers and documents as part of a litigation hold
7. Prefer internal union charges against Mr. Bond for multiple violations of the UBC Constitution and report any and/or all illegal activity to the proper federal and local agencies
8. As the UBC also removed three other appointed Representatives seated immediately under Bond in the Council leadership structure; hold these individuals responsible for their actions via the UBC Constitution or other legal channels (file charges with federal and local agencies)
9. Allow Jon Gould to assist and participate in the forensic audit as he is personally aware of numerous violations of the law and already knowledgeable of rat holes used by CRC officials to embezzle millions of dollars in union funds
10. Commission a third-party investigation (involving Mr. Gould) into the strategy, communications, expenses, coverup, denial, assistance? bribes? and general fabricated briefs and oral arguments made by Council attorneys on behalf of Mr. Bond and others. These false statements and legal filings allowed Mr. Bond, Mr. Nelson, and other Council leaders to avoid accountability for their actions and resulted in legal decisions that negatively affected the CRC membership.

If appropriate action isn't taken immediately, we, the twenty-two or so thousand members of the STL-KC-CRC will be forced to seek leave to file a verified complaint under 29 U.S.C. § 501(b) derivative action against the STL-KC-CRC, the Chicago Regional Council, and the UBC. We look forward to your prompt response and action. Should the UBC, CRC, and Chicago Regional Council ignore this demand, we will see you in court.

In Solidarity,

*[signature]*

Jonathan M. Gould, MBA

Journeyman, Local #1310

Membership/Class Representative

CC: Gary Perinar, Execututve Secretary-Treasurer

E. Prosise, District Director – Western Region – OLMS

K. Serrano, Supervisory Investigator – Western Region – OLMS

T. Scharr, Investigator – Western Region – OLMS

C. Spillman – Criminal Investigation – IRS

B. Hudelson – Office of Inspector General – DOL

J. Johnson – Special Agent – FBI

E. Roehl – Special Agent – Public Corruption – FBI

H. Goldsmith – Asst. US Attorney – Eastern District of Missouri – DOJ

L. McClure-Hartman – Asst. US Attorney – Eastern District of Missouri – DOJ

R. Honig – Acting US Attorney – District of New Jersey – DOJ

W. Bell – Prosecuting Attorney – St. Louis County

K. Gardner – St. Louis Circuit Attorney

E. Schmitt – Attorney General – Missouri