| | | |
|---|---|---|
| JONATHAN M. GOULD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-001187 RLW |
| | ) | |
| UNITED BROTHERHOOD OF CARPENTERS | ) | |
| AND JOINERS OF AMERICA, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DOUGLAS J. MCCARRON, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER OF UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA AND DOUGLAS J. MCCARRRON TO COMPLAINT

COME NOW Defendants United Brotherhood of Carpenters and Joiners of America ("UBC") and Douglas J. McCarron (collectively "Defendants"), by and through the undersigned counsel, and for their Answer and Affirmative Defenses to the Complaint and Request for Injunction ("Complaint") (ECF No. 1), filed by Plaintiff Jonathan Gould ("Gould"), state as follows[1]:

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name                    Jon Gould (Jonathan)
Street Address          7357 Providence Dr.

---

[1] Gould appearing *pro se*, filed the Complaint on or about October 5, 2021, using what appears to be a court-provided template/form. In answering the Complaint, Defendants repeat standardized text from the template/form for clarity purposes.

| City and County | Edwardsville: [sic] Madison |
| State and Zip Code | Illinois 62025 |
| Telephone Number | 618-980-0205 |
| E-mail Address | gouldj77@icloud.com |

**ANSWER**: Defendants admit that Gould, as Plaintiff, filed the Complaint, and that the Street Address, City, State, and Zip Code, are that of Gould. Defendants lack sufficient information to form a belief as to the truth or falsity of Gould's Telephone Number and Email Address and, therefore, deny the allegations on that basis.

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (*if known*). [Emphasis in original.] Attach additional pages if needed.

**ANSWER**: Defendants admit that Gould filed a Complaint in the above-captioned case, and named the UBC and McCarron as defendants, and that the Street Address, City, State and Zip Code, and Telephone Number are contact information for Defendants, and admits that McCarron is UBC General President.

## II. Basis for Jurisdiction[.]

What is the basis for federal court jurisdiction? Federal question.

**ANSWER**: Paragraph II, "Basis for Jurisdiction" states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph II.

**II.A. If the Basis for Jurisdiction is a Federal Question**[:]  (LMRA) (LMRDA) 29 U.S.C. 411 (4), 29 U.S.C. 431 (c), 29 U.S.C.  436  Sec[.] 206, 29 U.S.C. 436 Sec[.] 209 (B, C, D), 29 U.S.C. 412 Sec[.] 102, 29 U.S.C. 461 Sec[.] 301 A, 29 U.S.C. 462 Sec[.] 302, 29 U.S.C. 464 Sec[.] 304 (A, B, C), 29 U.S.C. 501 Sec[.] 501 (A, B, C), 29 U.S.C. 521 Sec[,] 601 (A).

**ANSWER**:     Paragraph II.A states a legal conclusion(s) to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph II.A.

**II.B.** If the Basis for Jurisdiction is Diversity of Citizenship[.]

> 1.a. If the plaintiff is an individual[:] The plaintiff, Jonathan M. Gould, is a citizen of the United States of America (Illinois).[2]

**ANSWER**:     Paragraph II.B.1.a. states a legal conclusion to which no response is required.  To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph II.B.1.a. and therefore deny the allegations on that basis.

**II.B.** If the Basis for Jurisdiction is Diversity of Citizenship[.]

> 2.a. The Defendants[.]  If the defendant is an individual[:]  The defendant, Douglas J. McCarron is a citizen of  the United States of America (unknown).

**ANSWER**:     Defendants admit that Douglas J. McCarron is a citizen of the United States, and deny all remaining allegations in Paragraph II.B.2.a.

---

[2] In the Complaint, under Paragraph II, Gould did not check the box indicating jurisdiction is based on "Diversity of Citizenship".

**II.B.** If the Basis for Jurisdiction is Diversity of Citizenship[.]

> 2.b. The Defendants[.]  If the defendant is a corporation[:]  The defendant, United Brotherhood  of Carpenters and Joiners of America is incorporated under the laws of the State of District of Columbia, and has its principal  place of business in the  State District of Columbia.

**ANSWER**:  Defendants admit that the UBC's principal place of business is in District of Columbia.  Defendants deny the remaining allegations in Paragraph II.B.2.b.

**II.B.** If the Basis for Jurisdiction is Diversity of Citizenship[.]

> 3. The Amount in Controversy[.]  The St. Louis-Kansas City Carpenters Regional Council has net assets of $49,000,000 as of 6-30-21.  Pension Funds hold assets of $3.1 Billion as of 4-30-21.  Former EST Al Bond has been accused of Six to Seven Figure Misappropriation of Funds.  Traing [sic], H&W [sic], Vacation, Market Recovery, Scholarship, Other Pension Funds, and Political Funds hold hundreds of millions of dollars or more.

**ANSWER**:  Defendants deny that the St. Louis-Kansas City Carpenters Regional Council had net assets of $49,0000,000.00 as of June 30, 2021.  Provided further, Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph II.B.3 and, therefore, deny each and every remaining allegation on that basis.

**III. Statement of Claim**[.]

A. Where did the events giving rise to your claim(s) occur? Doug McCarron, acting as Gen[eral] Pres[ident] of the U.B.C. removed Al Bond & three other Exec. [sic] Board Members from the Carpenters Office at 1401 Hampton Ave.[,] St. Louis[,] MO[] 63139[.]

**ANSWER**: Defendants deny each and every allegation in Paragraph III.A.

**III**. **Statement of Claim[.]**

B. What date and approximate time did the events giving rise to your claim(s) occur? September 24, 2021 at 9 a.m. through the present.

**ANSWER**: Defendants deny each and every allegation in Paragraph III.B.

**III. Plaintiff's Statement of Claims**[3]

**[Paragraph III, bullet point #1:]** I seek an injunction, on behalf of St. Louis-Kansas City Carpenters' Regional Council (STLKCCRC) members, to block, halt, or reverse the announced United Brotherhood of Carpenters & Joiners (UBC) merger of the STLKCCRC into the Chicago Regional Council of Carpenters. I am a 22-year member in good standing, from Local #1310, carrying Journeyman's card.

---

[3] Rather than numbering paragraphs under the heading "Plaintiff's Statement of Claims" of the Complaint (ECF No. 1, p. 5), Gould lists a series of unnumbered bullet points containing allegation(s). For ease of reference, Defendants will list and identify each bullet point in numerical order and provide a response.

**ANSWER**: Defendants admit that Gould has been a member for approximately twenty-two (22) years, is a member in good standing of Local Union #1310, and is classified as a journeyman carpenter. Defendants deny each and every remaining allegation in Paragraph III, bullet point #1.

> **[Paragraph III, bullet point #2:]** The merger press release and actions directed by Douglas J. McCarron (DJM) and the UBC, which were publicized on 9/29/2021, stand in stark contrast to numerous published reports, DJM and UBC actions taken from 9/24-9/28, and evidence that clearly falls within UBC and Labor Management Reporting and Disclosure Act's (LMRDA) reasons supporting Trusteeship; not a merger or dissolution of STLKCCRC.

**ANSWER**: Defendants deny each and every allegation in Paragraph III, bullet point #2.

> **[Paragraph III, bullet point #3:]** Per information and belief, the following items occurred, and should support a Trusteeship.

ANSWER: Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph III, bullet point #3 and therefore deny the allegations on that basis.

> **[Paragraph III, bullet point #4:]** DJM received an anonymous letter from a former STLKCCRC employee describing hostile work environment, sexual harassment, and misappropriation of funds by Bond and others.

**ANSWER**: Defendants admit it received an undated, anonymous letter purportedly from a former employee of the St. Louis-Kansas City Carpenters Regional Council. Defendants deny the remaining allegations in Paragraph III, bullet point #4.

[Paragraph III, bullet point #5:] DJM or agents acting on DJM and the UBC's behalf removed Al Bond and three other Executive Board members from the STLKCCRC building located at 1401 Hampton Ave.[,] St. Louis, Mo [sic] 63139 at around 9 a.m. on 9/24/2021; due to the contents of said letter.

**ANSWER**: Defendants deny each and every allegation in Paragraph III. Bullet point #5.

**[Paragraph III, bullet point #6:]** UBC agents searched Al Bond's office on 9/24 and again on 9/27.

**ANSWER**: Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph III, bullet point #6 and therefore deny the allegations on that basis.

**[Paragraph III, bullet point #7:]** Al Bond was officially removed from his position as STLKCCRC Executive Sec[sic]-Treasurer (EST) on 9/28. The other three officials were eventually terminated on 9/30.

**ANSWER**: Defendants deny that Bond was removed from his position. Defendants lack sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph III, bullet point #7 and therefore deny the allegations on that basis.

**[Paragraph III, bullet point #8:]** On 9/27, Business Representatives employed by the STLKCCRC informed Delegates that Bond had been removed from office, along with three other individuals. The agents relayed that the UBC was overseeing operations in KC and STL, but that there were no issues on the western side of Missouri.

**ANSWER**: Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph III, bullet point #8 and therefore deny the allegations on that basis.

> **[Paragraph III, bullet point #9:]** Over the course of 9/24...9/27 employees of the STLKCCRC informed individuals inside and outside of the STLKCCRC that Bond had been removed for numerous violations of law and the UBC Constitution, including sexual harassment and financial malfeasance. These employees also stated that Bond would be facing internal charges from the UBC due to his transgressions. Lastly, employees confirmed the existence of the anonymous letter delivered to Doug McCarron and the UBC. These individuals confirmed the initial stories of Bond's removal due to poor work environment issues and financial misdeeds to media outlets, including KMOX 1120A.M.

**ANSWER**: Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph III, bullet point #9 and, therefore, deny each and every allegation therein on that basis.

> **[Paragraph III, bullet point #10:]** If the purpose of DJM and the UBC's actions forcing a merger to better use resources, reduce costs, increase worker/contractor mobility, and improve market share, why were four Executive Board members removed from office?

**ANSWER**: Defendants deny the allegations in Paragraph III, bullet point #10.

> **[Paragraph III, bullet point #11:]** In 2010 DJM and the UBC directed the former KC [sic] Carpenters Regional Council to merge into the STL [sic] Carpenters District

Council.  The published motivations for the merger were to better use resources, reduce costs, increase worker/contractor mobility, and improve market share.  However, in May of 2018, Al Bond, then EST of the STLKCCRC signed an affidavit stating that the EST Davis was removed from office and the KC [sic] Council was merged into the STL [sic] Council because of rumors surrounding Davis's requiring kickbacks from his appointed Executive Board members.  The kickback story was no rumor, the newly formed STLKCCRC eventually reimbursed the individuals targeted by Davis's scheme with STLKCCRC funds.  DJM, the UBC, and Al Bond had lied to the general public, their members, signatory contractors, and the media about the reasons behind the "merger" and failed to hold EST Davis accountable on any level.  If the purpose of the KC [sic] merger in to STL [sic] was really to better use resources, reduce costs, increase worker/contractor mobility, and improve market share, why was EST Davis removed from office?

**ANSWER**: Defendants admit that by letter dated July 15, 2010, the Kansas City and Vicinity District Council of Carpenters was dissolved and its operations and jurisdiction were merged into other councils affiliated with the UBC including, but not limited to, the St. Louis, Missouri District Council of Carpenters.  As a result of the dissolution, the position of Executive Secretary-Treasurer of the Kansas City and Vicinity District Council of Carpenters was eliminated.

Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph III, bullet point #11 that "(t)he published motivations for the merger were to better use resources, reduce costs, increase worker/contractor mobility, and improve market share.  However, in May of 2018, Al Bond, then EST of the STLKCCRC signed an affidavit stating that the EST Davis was removed from office and the KC [sic] Council was merged into the STL

9

[sic] Council because of rumors surrounding Davis's requiring kickbacks from his appointed Executive Board members. The kickback story was no rumor, the newly formed STLKCCRC eventually reimbursed the individuals targeted by Davis's scheme with STLKCCRC funds," and, therefore, deny each and every allegation on that basis.

Defendants deny that "DJM, [and] the UBC, … had lied to the general public, their members, signatory contractors, and the media about the reasons behind the 'merger' and failed to hold EST Davis accountable on any level."

With respect to the allegation(s) that "Al Bond had lied to the general public, their members, signatory contractors, and the media about the reasons behind the 'merger' and failed to hold EST Davis accountable on any level," Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations and, therefore, deny each allegation on that basis.

With respect to the allegations that "(i)f the purpose of the KC [sic] merger in to STL [sic] was really to better use resources, reduce costs, increase worker/contractor mobility, and improve market share, why was EST Davis removed from office?", Defendants deny the allegations referenced above in Paragraph III, bullet point #11.

Defendants deny each and every other allegation not specifically denied or admitted in Paragraph III, bullet point #11.

**[Paragraph III, bullet point #12:]** Financial issues and coverup with the STLKCCRC are easy to pinpoint. They include:

A.  LM2 reports

B.  Office of Labor Management Standards Compliance Audits (OLMS)

C. Third-party audits

D. Exhibits (receipts) from civil litigation

E. Leaked financial reports from inside the STLKCCRC

F. Deposition testimony of STLKCCRC accounting staff

G. STLKCCRC meeting minutes

H. UBC communications with OLMS investigators

I. Missing expenses and "other" receipts on LM2 reports

J. Filing false LM2 reports

K. Filing false W2s with the Internal Revenue Service (IRS)

L. Probable collusion with OLMS officials to hide Bond's deceiving STLKCCRC Delegates into approving an $85,000 per year salary increase in 2017

M. Proof that the UBC and DJM knew that Bond coerced STLKCCRC Delegates into providing him with an enormous raise by insinuating that the UBC had directed the STLKCCRC to increase Bond's salary

N. Confirmation of labor union fraud inside the STLKCCRC, as lead by Al Bond, from FBI Special Agents

O. Inconsistent independent audit results

P. UBC officials ignoring negative OLMS compliance audits from other preferred ESTs in 2009 and 2013 (known)

Q. STLKCCRC officials conspiring with preferred contractors to defraud union members

R. Proof that DJM and the UBC have been ignoring fraud inside the STLKCCRC since at least September of 2014

S. DJM and the UBC are themselves under federal investigation in New Jersey

T. STLKCCRC auditing firm, Calibre CPA, was subpoenaed in the New Jersey investigation of UBC financials and leadership

U. Bond failed to report the UBC and DJM investigation to STLKCCRC Delegates despite knowing about the subpoenas since the Fall of 2019

V. Bond support DJM's candidacy for UBC General President in 2020

W. Bond receiving a STLKCCRC vehicle allowance, insurance, and mileage reimbursement despite not having driving privileges following multiple DUI's

X. DJM using UBC funds to pay sexual harassment claims against himself and other UBC officials. Bond using STLKCCRC funds to pay sexual harassment claims made against him and others inside the STLKCCRC

Y. Confirmed violations of STLKCCRC spending/travel policies to convert union funds for personal benefit of Bond and other STLKCCRC employees

Z. Current sexual harassment and discrimination lawsuits facing DJM, the UBC, and the STLKCCRC

**ANSWER**: Defendants deny each and every allegation in Paragraph III, bullet point #12, including subparagraphs A-Z.

> **[Paragraph III, bullet point #13:]** By announcing and presumably starting the process to merge the STLKCCRC into the Chicago Council, the UBC and DJM are effectively punishing the 22,000 members who belong to the STLKCCRC. Those individuals did nothing wrong, their former EST, Al Bond, is the reason for DJM and the UBC's actions.

**ANSWER**: Defendants lack sufficient information to form a belief as to the truth or falsity of the allegation that "those individuals did nothing wrong" and, therefore, deny the allegation. Defendants deny the remaining allegations in Paragraph III, bullet point #13.

> **[Paragraph III, bullet point #14:]** The members of the STLKCCRC deserve their identity, they deserve to see Mr. Bond held accountable for violations of multiple laws, and they deserve the ability to seek reimbursement of purged funds from former EST Bond. If DJM and the UBC are allowed to carry out their merger, it rewards Bond and the three individuals removed from office. It protects DJM and the UBC's failure to fulfill their fiduciary and leadership obligations to the entire Brotherhood.

**ANSWER**: Defendants admit that if any violations of laws occurred that permit relief to members, members of the Mid-America Carpenters Regional Council deserve to hold Mr. Bond accountable and deserve to seek reimbursement. Defendants deny the remaining allegations in Paragraph III, bullet point #14.

> **[Paragraph III, bullet point #15:]** The UBC was obviously committing to a Trusteeship by their original actions, what lead them to change course is anyone's guess. When STLKCCRC agents informed Delegates that the UBC was supervising operations in KC [sic] and STL [sic], that statement clearly explains that suspension of autonomy was imposed on the STLKCCRC; by definition that is a Trusteeship. The STLKCCRC was under Trusteeship the second that it lost the ability to direct its own operations, including financial independence when DJM directed UBC agents to assume control of the STLKCCRC.

**ANSWER**: Defendants deny the allegations in Paragraph III, bullet point #15.

**[Paragraph III, bullet point #16:]** Federal agencies have been actively securing information from myself and others into the operations of the UBC and the STLKCCRC, active investigations recure [sic] a Trusteeship to protect the members assets. By allowing a merger, numerous individuals may be able to escape punishment with the UBC. The merger of union funds may even hinder investigator's ability to effectively and timely track funds spent illegally by union officials.

**ANSWER**: Defendants deny the allegations in Paragraph III, bullet point #16.

**[Paragraph III, bullet point #17:]** Witnesses to the actions taken by the UBC and DJM include STLKCCRC employees, STLKCCRC officers, STLKCCRC members, UBC employees, and former STLKCCRC employees.

**ANSWER**: Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph III, bullet point #17 and therefore deny each and every allegation therein on that basis.

**[Paragraph III, bullet point #18:]** DJM& UBC have also used mergers to silence opposition and/or place chosen leaders in charge of the merged councils.

**ANSWER**: Defendants deny the allegations in Paragraph III, bullet point #18.

**[Paragraph III, bullet point #19:]** DJM & UBC have been sued by several whistleblowers who lost their jobs for reporting DJM supporters and/or alies [sic] who were committing crimes. After DJM & the UBC removed whistleblowers, they merged councils. This pattern has been repeated across the U.S.

**ANSWER**: Defendants deny the allegations in Paragraph III, bullet point #19.

**III.C.** What are the facts underlying your claim(s)?

> Under Trusteeship, charges against Bond could have continued. DJM &UBC ignored Section 54 concerning Local Union Funds.

**ANSWER**: Defendants admit Gould and any other eligible member may bring charges against another member including Bond, in accordance with §§51and 52 of the UBC Constitution, whether or not a trusteeship was imposed or a merger directed. (ECF No. 22-2.) Defendants admit that pursuant to §14-D of the UBC Constitution, "(a) member of the [UBC] General Executive Board may file charges alleging a violation of the Constitution and Laws against any officer or member of any subordinate body, and the processing and trial of such charges shall be conducted under procedures to be established by the General Executive Board" and that such charges may still be brought whether or not a trusteeship was imposed or a merger directed. Defendants deny they "ignored Section 54 concerning Local Union Funds."

**III.C., continued:** Also, see attached.

**ANSWER**: Defendants deny that there was any document "attached" to the Complaint (ECF No. 1) filed on or about October 5, 2021. Defendants admit that attached to the Complaint served on Defendants was a Memorandum for Clerk (ECF No. 2) and a letter from Gould to UBC General President McCarron dated October 3, 2021 (ECF 2-1). Defendants lack sufficient information to form a belief as to the truth or falsity of the allegation that these document(s) are alleged to have been "attached" to Complaint filed as ECF No. 1 and, therefore, deny the allegation on that basis. To the extent the Memorandum for Clerk (ECF No. 2) or October 3, 2021 letter (ECF No. 2-1) are

considered part of the Complaint filed as ECF No. 1, and contains allegations in support thereof, Defendants deny the allegations therein.

**III.C., continued:** Multiple violations of the UBC Constitution, including General Officer, General President Dereliction of Duty. DJM failed to make a complete report to members following seizure of STLKCCRC. DJM & UBC failed to establish a trusteeship as set forth in 6D. DJM removed Bond & others under an emergency situation. This requires trusteeship. DJM stole the power of STLKCCRC members to conduct a trial against Al Bond. DJM didn't charge Bond either.

**ANSWER**: Defendants deny the allegations in Paragraph III. C. referenced above.

Defendants deny each and every other allegation in Paragraph III.C., not otherwise admitted or denied herein.

## IV. Irreparable Injury[.]

We do not seek monetary damages, only the ability to keep STLKCCRC Funds from the UBC & Chicago Council. Specifically, until forensic accounting can take place.

**ANSWER**: Defendants deny that Gould is entitled to any relief and, therefore, deny the allegations for relief. Defendants admit that review(s) of the financial records of the St. Louis-Kansas City Carpenters Council have been conducted by the UBC and the Mid-America Carpenters Regional Council, and further action is being considered. Defendants deny each and every remaining allegation in Paragraph IV not specifically admitted or denied herein.

## V. Relief[.]

Court order or injunction blocking the UBC & DJM's attempts to coverup crimes under the ruse of a merger. The UBC and DJM directed STLKCCRC to merge into Chicago's council. This action can start immediately, but takes time to carryout completely. Chicago officials are currently in STLKCCRC liquidating assets.

**ANSWER**: Defendants admit that, pursuant to the authority provided for under §6-A of the UBC Constitution, effective September 27, 2021, the St. Louis-Kansas City Carpenters Regional Council was dissolved and its geographical and trade jurisdiction was assigned to the then-Chicago Regional Council of Carpenters, and that the dissolution and assignment are complete. Defendants deny each and every remaining allegation in Paragraph V. Relief, and deny that Gould is entitled to any relief.

## VI. Certification and Closing[.]

    A. For Parties Without an Attorney. Date of signing: 10-05-21

        Signature of Plaintiff [signature],

        Printed Name of Plaintiff[:] Jonathan M. Gould.

**ANSWER**: Defendants lack sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph VI and, therefore, deny the same.

## AFFIRMATIVE DEFENSES

1.    Gould's claims are not ripe and are further barred by his failure to exhaust the internal appeal remedies available to him as a member under the UBC Constitution. The dissolution and merger at issue here was made effective by order of McCarron, the General President of the UBC, on September 27, 2021. The authority for this action is found under § 6-A

of the UBC Constitution, which provides the right to dissolution and merger "in the discretion of the General President *subject to appeal to the General Executive Board*." (Emphasis added). Section 53-H of the UBC Constitution then provides any member – such as Gould – with the right to appeal decisions of the General President to the General Executive Board by filing an appeal within thirty (30) days from the date of receipt of the General President's decision. Such an appeal is made by filing with the General Secretary-Treasurer. Section 53-J further provides that "[a]ll members…are required to exhaust the administrative remedies provided in this Section [53] before commencing proceedings in any court or any agency provided by law." The remedies in §§ 6 and 53 provide Gould an adequate remedy to address McCarron's actions concerning the dissolution and merger to the General Executive Board. Despite these clear internal appeal rights under §§ 6 and 53 of the UBC Constitution, Gould has filed no appeal with the General Executive Board through the General Secretary-Treasurer. Gould failed to afford himself of these remedies and has provided no explanation as to how these procedures were not available.

2.      Defendants' actions were in accordance with the procedures and authorities provided for under provisions of the UBC Constitution, specifically § 6-A, in that the decision was made in the best interests of the members including, but not limited to, ensuring better oversight of the Council's operations, reduced costs, maximization of resources, and an increase in market competitiveness

3.      Defendants' actions were for good cause and good faith, including that the Defendants' actions were taken as a result of issues regarding the operation of the St. Louis-Kansas City Carpenters Regional Council, including financial mismanagement.

4.      Gould has failed to state any claim for relief.

5. Gould's claim(s) are barred by res judicata and collateral estoppel of all issues decided in *Gould v. Bond*, Case No. 4:19-cv-925 (Eastern District of Missouri) and Case Nos. 19-3087, 19-3197, and 19-3200 (Eighth Circuit), and *Gould v. St. Louis-Kansas City Carpenters' Regional Council et al.*, Cause No. 1622-CC09954 (Missouri Circuit Court for the City of St. Louis) and Cause No. ED108318 (Missouri Eastern District Court of Appeals).

6. Gould claim(s) are barred by laches.

7. Gould's claim(s) are barred by estoppel.

8. Gould's claim(s) are barred by the statute of limitations.

9. Gould's claim(s) are barred by waiver.

WHEREFORE, Defendants United Brotherhood of Carpenters and Joiners of America and Douglas J. McCarron prays for this Court's Judgment and Order in their favor and against Plaintiff Jonathan M. Gould on all claims in the Complaint and Request for Injunction, dismissing all claims in the Complaint with prejudice, and for such other and further relief as this Court deems just and proper.

[Remainder of page intentionally left blank.]

Respectfully submitted,

**BLITZ, BARDGETT & DEUTSCH, L.C.**

By: /s/ *Robert D. Blitz*
Robert D. Blitz, #24387MO
Aaron W. Sanders, #64133MO
Thomas H. Limbrick, #69196MO
120 South Central Ave., Suite 1500
St. Louis, Missouri 63105
314-863-1500
314-863-1877 (facsimile)
rblitz@bbdlc.com
asanders@bbdlc.com
tlimbrick@bbdlc.com


**DOWD BENNETT LLP**

James G. Martin, #33586MO
James B. Martin, #70219MO
Michelle Nasser, #68952MO
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300
(314) 863-2111 (facsimile)
jmartin@dowdbennett.com
jbmartin@dowdbennett.com
mnasser@dowdbennett.com


**SHANLEY, APC**

Brian F. Quinn, #447619DC (*pro hac vice*)
101 Constitution Avenue, NW, 10th Floor
Washington, D.C. 20001
(202) 589-1151
(202) 589-0105 (facsimile)
bquinn@shanleyapc.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was electronically filed with the Clerk of the

Court on December 2, 2021, using the CM/ECF filing system and served to Plaintiff Jonathan M.

Gould by U.S. Priority Mail at 7357 Providence Drive, Edwardsville, Illinois 62025.

*/s/ Robert D. Blitz*