**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

JONATHAN M. GOULD,          )
                              )
        Plaintiff,         )
                              )
     v.                    )        No. 4:21-CV-1187 RLW
                              )
UNITED BROTHERHOOD OF      )
CARPENTERS & JOINERS OF       )
AMERICA, et al.,          )
                              )
        Defendants.      )

## MEMORANDUM AND ORDER

This matter is before the Court on a number of motions.  Pending before the Court is Plaintiff Jonathan M. Gould's motions for an "Emergency Injunction" (ECF Nos. 2, 17); "Emergency Motion for Expedited Hearing" (ECF No. 4); "Motion Objecting to Extension of Time" (ECF No. 14); Motion to Disqualify Attorneys Robert D. Blitz and Aaron W. Sanders (ECF No. 15); Motion for the Court to Amend its December 2, 2021 Order "Pursuant to Rule 59" (ECF No. 18); Motion to Disqualify Attorney Brian F. Quinn (ECF No. 24); and Motion to Disqualify Judge Ronnie L. White under 28 U.S.C. § 455 (ECF No. 29).   Also pending before the Court is Defendants United Brotherhood of Carpenters and Joiners of America and Douglas J. McCarron's Motion to Strike Plaintiff's Reply to Defendants' Answer (ECF No. 32).

### *Background*

This matter involves a dispute over the internal structure and governance of a labor organization.  Plaintiff Jonathan M. Gould, who is proceeding in this matter <u>pro</u> <u>se</u>, is a member of Local No. 1310 and seeks an injunction on behalf of the St. Louis-Kansas City Carpenters Regional Council ("STLKCCRC") against the United Brotherhood of Carpenters and Joiners of

America ("UBC") and its General President, Douglas J. McCarron, to stop the merger between two regional councils.

In his Complaint, which was filed on October 5, 2021, Plaintiff alleges Defendant McCarron received an anonymous letter from a former STLKCCRC employee describing a hostile work environment, sexual harassment, and misappropriation of funds by Al Bond, the Executive Secretary Treasurer ("EST") of STLKCCRC, and others.[1]   Plaintiff alleges Defendant McCarron, or agents acting on behalf of UBC, removed Mr. Bond and three other executive board members from the STLKCCRC building in St. Louis due to the content of that letter.   Mr. Bond was officially removed from his position as EST of STLKCCRC on September 28, 2021.   Three other executive board members of STLKCCRC were also terminated on September 30, 2021.

Plaintiff alleges there have been a number of financial issues and coverups within the STLKCCRC involving Mr. Bond, and that he is under federal investigation.   Plaintiff also alleges Defendant McCarron and the UBC are under a different federal investigation in New Jersey.

Plaintiff alleges that when UBC suspended operations and took control at STLKCCRC, the union was committed to a trusteeship, but on September 29, 2021, there was a press release published that STLKCCRC was merging with the Chicago Regional Council of Carpenters ("Chicago Region").   Plaintiff states, "[W]hat led them to change course is anyone's guess." (ECF No. 1 at 9).   Plaintiff alleges that the merger of the STLKCCRC into the Chicago Region, which he opposes, punishes the 22,000 members of the STLKCCRC, who did nothing wrong. Plaintiff alleges, "[T]he members of the STLKCCRC deserve their identity, they deserve to see Mr. Bond held accountable for violations of multiple laws, and they deserve the ability to seek

---

[1]In the text of his Complaint, Plaintiff refers to letters and other attachments.   There were no documents attached to the Complaint Plaintiff filed with the Court.   (ECF No. 1).

reimbursement of purged funds from [Mr.] Bond."   (ECF No. 1 at 8).   Plaintiff maintains "if [Defendant McCarron] and the UBC are allowed to carry out their merger, it rewards [Mr.] Bond and the three individuals removed from office.   It protects [Defendant McCarron] and the UBC's failure to fulfill their fiduciary and leadership obligations to the entire Brotherhood."   (Id.) Plaintiff alleges that by allowing a merger, "numerous individuals may be able to escape punishment with the UBC.   The merger of union funds may even hinder investigator's [sic] ability to effectively and timely track funds spent illegally by union officials."   (ECF No. 1 at 9).

In his Complaint, Plaintiff states the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141, et seq., and several sections of Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401, et seq., are at issue in this case.   For relief, Plaintiff asks that the Court enter an injunction blocking Defendants McCarron and the UBC's "attempts to coverup crimes under the ruse of a merger."   (ECF No. 1 at 10).   Plaintiff states he is not seeking monetary damages, but only the ability to keep STLKCCRC funds from the UBC and the Chicago Region until a forensic accounting can take place.   (Id.)

Plaintiff contemporaneously filed with his Complaint a document entitled "Memorandum to Clerk," in which he requests an emergency injunction to "block-pause-reverse [Defendants] McCarron and the UBC's efforts to hide fraud committed by Al Bond and punish rank and file members [of the STLKCCRC] by stealing their council and its identity."   (ECF No. 2). Plaintiff's "Memorandum to Clerk" was docketed as a motion for preliminary injunction. Plaintiff attached to his motion a letter signed by Plaintiff addressed to Defendant McCarron dated October 3, 2021.

On October 14, 2021, Plaintiff filed an "Emergency Motion for Expedited Hearing." (ECF No. 4).   In his motion, Plaintiff states the merger of union funds "will make it impossible

for member of federal agencies to properly investigate financial crimes committed by now deposed leader of the [STLKCCRC]."   (Id.)

On October 21, 2021, counsel for Defendants entered appearances and moved for a 30-day extension of time to respond to Plaintiff's Complaint and request for an injunction.   Defendants stated the request was being made to investigate the allegations in Plaintiff's Complaint and motion for an injunction.  (ECF No. 12).   The Court granted Defendants' motion for an extension of time.  (ECF No. 13).

On October 22, 2021, Plaintiff filed a motion objecting to the extension of time.   (ECF No. 14).   Plaintiff also moved to disqualify Defendants' counsel, attorneys Robert D. Blitz and Aaron W. Sanders.   Plaintiff argues that Messrs. Blitz and Sanders should be disqualified under Rule 4-3.7(a)(3) of Missouri Supreme Court Rules of Professional Conduct because they will be necessary witnesses at trial.   (ECF No. 15).

On October 25, 2021, Plaintiff renewed his motion for an injunction or stay.   (ECF No. 17).   Plaintiff also filed a motion, "Pursuant to Rule 59," asking the Court to amend its order granting Defendants an extension of time to respond to Plaintiff's Complaint and request for an injunction.   (ECF No. 18).

On November 3, 2021, Defendants filed a Memorandum in Opposition to Plaintiff's Emergency Motion for Expedited Hearing and Emergency Motion for Injunction or Stay.   (ECF No. 22).   On November 4, 2021, Plaintiff filed a motion to disqualify defense counsel, attorney Brian F. Quinn, on the ground that he is likely to be a witness at trial.   (ECF No. 24).

On December 2, 2021, Defendants filed an Answer to Plaintiff's Complaint.   On December 23, 2021, Plaintiff filed a document entitled Plaintiff's "Reply to Defendants' Answer of Complaint and Request for Injunction to Cease Merger Activities as Ordered by Douglas J.

McCarron and the U.B.C."   (ECF No. 30).   Defendants have moved to strike this document as improper under Rule 7 of the Federal Rules of Civil Procedure.   (ECF No. 32).

On December 23, 2021, Plaintiff also filed a Motion to Disqualify Judge Ronnie L. White under 28 U.S.C. § 455.   (ECF No. 29).   Plaintiff argues, among other things, that the Court should be disqualified on the ground that its former law clerk, attorney Thomas H. Limbrick, has entered an appearance in this case on behalf of Defendants.

For the reasons that follow, the Court denies Plaintiff's motions for an "Emergency Injunction," which the Court construes as motions for a preliminary injunction; Emergency Motion for Expedited Hearing; Motion Objecting to Extension of Time; motions to disqualify defense counsel; Motion for the Court to Amend its December 2, 2021 Order "Pursuant to Rule 59"; and Motion to Disqualify Judge Ronnie L. White under 28 U.S.C. § 455.   The Court grants Defendants' Motion to Strike Plaintiff's Reply to Defendants' Answer.

*Discussion*

## I.   PROCEDURAL MOTIONS AND MOTIONS TO DISQUALIFY

### A.   Motion to Disqualify the Undersigned Judge

The Court will first address Plaintiff's motion to disqualify the undersigned as the judge in this proceeding.   A district judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."   28 U.S.C. § 455(a).   The Eighth Circuit has instructed that impartiality is judged objectively: "Would the average person, knowing the facts alleged by the part[y] seeking disqualification, question the Judge's impartiality, and, if so, would the question be reasonable?"   O'Bannon v. Union Pac. R. Co., 169 F.3d 1088, 1091 (8th Cir. 1999).   Stated differently, the test is whether a "reasonable person, who knew the circumstances, would question the judge's impartiality, even though no actual bias or prejudice has been shown."

Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003).   See also Am. Prairie Const. Co. v. Hoich, 560 F.3d 780, 789 (8th Cir. 2009).   If this test is not satisfied, judges have a duty to decide the cases and controversies which come before them.   See Perkins v. Spivey, 911 F.2d 22, 28 (8th Cir. 1990).

Plaintiff moves to disqualify the undersigned based on the fact that Thomas L. Limbrick, who has entered an appearance on behalf of Defendants, served as a law clerk in the undersigned's chambers.   Plaintiff also points to the fact that the law firm of Blitz, Bardgett, and Deutsch, LLC employs another former law clerk, attorney Christopher Pieper.   Plaintiff argues that delay and adverse rulings in this case are evidence of the undersigned's impartiality in this case.

The Eighth Circuit Court of Appeals has endorsed the view that in order to avoid the appearance of impropriety, a certain amount of time should pass before a judge should preside over a case in which his or her former law clerk is acting as counsel.   United States v. Hollister, 746 F.2d 420, 425-26 (8th Cir. 1984).   To this end, the Eighth Circuit recommends a one-year recusal period.   Id.   In this district, former law clerks are prohibited from appearing before a judge for whom they have served for a period of one year, in order to avoid the appearance of impropriety.   Eastern District of Missouri Local Rule 12.04 provides:

> An attorney who is a former law clerk to a judge of this Court is prohibited from acting as counsel of record in a case assigned to that judge or otherwise appearing before that judge . . . in any case for a period of one year following the termination of the law clerk's service.

L.R. 12.04.

Mr. Limbrick served as a law clerk in the undersigned's chambers from August 2018 through April 2020.   At the time this suit was filed, it had been well over a year since Mr. Limbrick served as a law clerk.   As for Mr. Pieper, not only is he not entered in this case, but he served as a law clerk for the undersigned at an entirely different court more than 15 years ago.   There is no

impropriety or appearance of impropriety arising from the fact that Messrs. Limbrick and Pieper were at one time law clerks for the undersigned.

Plaintiff's argument that rulings in this case establish impartiality is without merit. Adverse judicial rulings "almost never" constitute a valid basis for recusal. Dossett v. First State Bank, 399 F.3d 940, 952–53 (8th Cir. 2005) (concluding that adverse rulings, including the failure to permit discovery, "almost never" constitute a valid basis for recusal). The Court granted Defendants' motion for extension of time based on the record before it and has addressed the parties' motions in an order and manner "so as to achieve the orderly and expeditious disposition of cases" in light of other matters pending before the Court. Dietz v. Bouldin, 579 U.S. 40, 45 (2016) (citations omitted). See also Biby v. Kansas City Life Ins. Co., 629 F.2d 1289, 1293 (8th Cir. 1980) ("It is critical to a trial court's power of control over its own docket and its ability to effectively serve all litigants seeking its service that it maintain control over the progress of cases before it, including control over any extensions of time."). Plaintiff's motion to disqualify the undersigned as judge in this matter is denied.

### B.    Motion to Disqualify Defense Counsel

Also pending before the Court are two motions to disqualify defense counsel. In one motion, Plaintiff moves that the Court disqualify attorneys Robert D. Blitz and Aaron W. Sanders. In a separate motion Plaintiff moves to disqualify attorney Brian F. Quinn.

Motions to disqualify opposing counsel rest with the discretion of the district court. Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1154 (8th Cir. 1999) (citing Harker v. Comm'r, 82 F.3d 806, 808 (8th Cir. 1996)). Because such motions are subject to abuse by opposing counsel, they are "subjected to particularly strict judicial scrutiny." Macheca Transp. Co. v. Philadelphia Indem. Co., 463 F.3d 827, 833 (8th Cir. 2006) (quoting Harker, 82 F.3d at 807). "A party's right

to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary."   Id. (quoted case omitted).

Citing to Missouri Supreme Court Rules of Professional Conduct 4-3.7, Plaintiff seeks to disqualify Messrs. Blitz, Sanders, and Quinn on the basis that they will be necessary witnesses at trial.   Missouri Supreme Court Rule of Profession Conduct 4-3.7 provides:[2]

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client.

Rule 4-3.7

The Eighth Circuit Court of Appeals has interpreted Rule 4–3.7 of the Missouri Supreme Court Rules of Professional Conduct to mean that an attorney is a "necessary witness" only if "there are things to which he will be the only one available to testify."   Macheca Transport Co., 463 F.3d at 833 (quoting State ex rel. Wallace v. Munton, 989 S.W.2d 641, 646 (Mo. Ct. App. 1999)).   In Macheca, Eighth Circuit held it was an abuse of discretion for the district court to disqualify the plaintiff's counsel without first establishing that the attorney was the only witness available to testify about the vexatious refusal to pay claim.   Id. at 833-34.   The standard is not whether the attorney could testify as to relevant information.   "Testimony may be relevant and even highly useful, but still not strictly necessary.   Blanket allegations that an attorney's testimony

---

[2] Eastern District of Missouri Local Rule 12.02 adopts the "Code of Professional Responsibility adopted by the Supreme Court of Missouri."   See L.R. 12.02.

is relevant to a party's claim is an insufficient basis upon which to discern whether the attorney 'will truly be a necessary witness in the sense that there are things to which he will be the only one available to testify.'" Id. (quoting State ex rel. Wallace, 989 S.W.2d at 646.)).

Furthermore, the Eighth Circuit "takes a very dim view" of disqualifying counsel at the pretrial stage. Turner v. AIG Domestic Claims, Inc., 823 F. Supp. 2d 899 (D. Neb. 2011). In Droste v. Julien, 477 F.3d 1030, 1035 (8th Cir. 2007), the Eighth Circuit found the district court abused its discretion by disqualifying plaintiff's counsel during the pretrial proceedings. "By its own terms, Rule 4-3.7 only prohibits a lawyer from acting as an 'advocate at a trial in which the lawyer is likely to be a necessary witness.'" Id. (quoting Rule 4-3.7). The Eighth Circuit noted that in most jurisdictions, including Missouri, a lawyer who is likely to be a necessary witness may still represent a client in the pretrial proceedings.[3] Id.

The Court finds Plaintiff's motions are without merit. Based on the record before it, the Court cannot conclude Messrs. Blitz, Sanders, and Quinn will be necessary witnesses at trial. With regard to Messrs. Blitz and Sanders, Plaintiff points to the fact that the two attorneys represented STLKCCRC and Mr. Bond in state and federal proceedings in the last four years and, therefore, were aware or should have been aware of "illegal spending, questionable behavior, and malfeasance" committed by Mr. Bond. (ECF No. 15 at 2). Plaintiff asserts Messrs. Blitz and Sanders "are the only witnesses" who can testify to matters surrounding Mr. Bond's dismissal as EST of STLKCCRC. (Id.) The Court does not agree.

---

[3]The Eighth Circuit did recognize is an exception when "the 'pretrial activity' includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role." Droste, 477 F.3d at 1035 (citing World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc., 866 F. Supp. 1297, 1303 (D. Colo. 1994)). There is nothing to suggest the exception is applicable in this case.

It is apparent from the record that Messrs. Blitz and Sanders are not the sole source of relevant information regarding the Mr. Bond's dismissal.   In his Complaint, Plaintiff alleges defendant McCarron was involved in the dismissal.   In addition, Defendants have submitted a declaration from Defendant McCarron, which states that the decision to remove Mr. Bond was based on an investigation done by UBC officials, not Messrs. Blitz and Sanders.   (ECF No. 22 at 8).   Plaintiff's sole basis for the removal of Messrs. Blitz and Sanders as attorneys in this case is the fact that they represented STLKCCRC and Mr. Bond in prior litigation.   It is axiomatic that attorneys acquire information about their clients during their representation; that is the very nature of legal representation.   Setting aside any issues of privilege, the Court is not convinced Messrs. Blitz and Sanders are the only source of admissible information about Mr. Bond's dismissal. Messrs. Blitz and Sanders may indeed have relevant information, but there is nothing to suggest they are the only witnesses who could testify as to the circumstances surrounding Mr. Bond's conduct or removal from STLKCCRC.

As for Mr. Quinn, Plaintiff argues that Mr. Quinn's testimony is necessary at trial because (1) he has direct knowledge of the fact that Mr. Bond "tricked" council delegates into a $85,000 raise; (2) he participated in depositions in <u>Savage v. Tweedy</u>, No. 3:12-CV-01317-HZ, 2013 WL 4063740 (D. Or. Aug. 11, 2013), a closed civil case that was pending in Oregon involving the UBC, a local council, and its EST; and (3) attorneys in Mr. Quinn's law firm helped draft UBC's plans to mitigate member dissent following other mergers.   (ECF No. 24 at 1-2).   Again, Plaintiff moves to disqualify Mr. Quinn based on knowledge Mr. Quinn acquired as an attorney, and the Court finds Plaintiff has not established that Mr. Quinn would be the only witness to testify to these matters, to the extent they are relevant in this dispute.

First, Plaintiff's own description in his Reply Memorandum of the alleged salary scheme undermines his argument that Mr. Quinn would be the only witness available to testify as to the circumstances surrounding it.   Plaintiff states, "Mr. Bond had his Assistant Executive Secretary-Treasurer ask Delegates to increase Bond's salary, because it was a directive from the [UBC]; from the Mid-Western District Vice President, Dave Tharpe.   The Delegates know that Douglas J. McCarron can merge or dissolve a Council or Local simply because he dislikes their elected leaders.   Therefore, Delegates often vote to concur with motions that originate from the UBC." (ECF No. 34 at 2).   Based on this description alone, there are at least three witnesses, other than Mr. Quinn, who would have information regarding this alleged scheme.

As for the litigation in Oregon, there is nothing to suggest that this litigation is relevant to the case at bar or, to the extent it is, that Mr. Quinn would be only the witness available to testify as to the events underlying the litigation.   Finally, as to Plaintiff's contention that Mr. Quinn's firm "helped draft" UBC plans to mitigate member dissent following other mergers, this information is likely covered by attorney-client privilege or the work product doctrine.   To the extent it is not, Plaintiff does not contend Mr. Quinn drafted these plans, only that someone in his firm did in 2010, eleven years prior to the dissolution of STLKCCRC.   Plaintiff fails to establish that Mr. Quinn would be only witness available to testify to these matters, to the extent they are relevant.

The Court denies Plaintiff's motions to disqualify defense counsel.   Setting aside the issue of privilege, the Court cannot conclude Messrs. Blitz, Sanders, and Quinn will be necessary witnesses at trial.   Plaintiff has not met his "heavy burden" to disqualify Defendants' choice of counsel.   Griffen by Freeland v. E. Prairie, Mo. Reorganized Sch. Dist. No. 2, 945 F. Supp. 1251,

1253 (E.D. Mo. 1996) (citing <u>Coffelt v. Shell</u>, 577 F.2d 30, 32 (8th Cir. 1978) (per curiam)).
Plaintiff's motions are denied.

      **C.**     **Motions Regarding the Extension of Time**

      Plaintiff opposes the 30-day extension of time the Court allowed Defendants to respond to
the Complaint.   On October 22, 2022, Plaintiff filed a "Motion Objecting to Extension of Time."
(ECF No. 14).   Plaintiff asserts in his motion that Defendants' request for an extension was not
made in good faith, in that they chose to hire attorneys with limited experience in union mergers,
and "wasted" 15 days by evading service and waiting until October 21, 2021, to enter appearances.
Plaintiff also contends in his motion that the delay will allow the Defendants to continue to transfer
funds belonging to STLKCCRC's members.   (<u>Id.</u>)

      On October 25, 2021, Plaintiff filed a motion "Pursuant to Rule 59" asking the Court to
amend its order granting Defendants a 30-day extension of time.   (ECF No. 18).   In his motion,
Plaintiff contends he was not allowed time to respond to the motion for extension of time, and the
extension will render Plaintiff's request for an injunction moot.

      The Court denies both of these motions.   First, Rule 59 of the Federal Rules of Civil
Procedure allows a litigant to file a motion for new trial or to alter or amend a judgment.   Fed. R.
Civ. P. 59.   It is not the means by which to seek amendment of a non-appealable order.
<u>Burckhard v. BNSF Ry. Co.</u>, 837 F.3d 848, 857 (8th Cir. 2016) ("Rule 59(e) generally may be
invoked only to support reconsideration of matters properly encompassed in a decision of the
merits.") (citations omitted).   As for Plaintiff's "Motion Objecting to Extension of Time," which
the Court construes as a motion for the Court to reconsider its October 21, 2021 Order granting
the Defendants an extension of time, the motion is denied as moot.   Defendants filed their Answer
to Plaintiff's Complaint on December 2, 2021.

**D.      Motion to Strike Plaintiff's Reply to Defendants' Answer**

Also pending before the Court is Defendants' motion to strike Plaintiff's filing dated December 23, 2021.   (ECF No. 32).   On December 2, 2021, Defendants filed an Answer to Plaintiff's Complaint.   On December 23, 2021, Plaintiff filed a document entitled "Plaintiff Jonathan M. Gould's Reply to Defendants' Answer of Complaint and Request for Injunction to Cease Merger Activities as Ordered by Douglas J. McCarron and the UBC."   (ECF No. 30). Defendants move to strike this filing on the ground that it is not a proper pleading under the Federal Rules of Civil Procedure.

Rule 7 of the Federal Rules of Civil Procedure only allows for the following pleadings in a civil case:

(1) a complaint;
(2) an answer to a complaint;
(3) an answer to a counterclaim designated as a counterclaim;
(4) an answer to a crossclaim;
(5) a third-party complaint;
(6) an answer to a third-party complaint; and
(7) if the court orders one, a reply to an answer.

Fed. R. Civ. P. 7 (a).   Here, Defendants filed an Answer to Plaintiff's Complaint.   While Defendants raised certain affirmative defenses, they did not assert any counterclaims.   Therefore, Plaintiff's filing is not an "answer to a counterclaim," and the Court did not order a "reply to an answer," as provided for in Fed. R. Civ. P. 7(a)(7).   Plaintiff's filing, labeled as a reply to an answer, is not allowed by Federal Rule of Civil Procedure 7(a) and will be stricken from the record for filing error.

The Court also declines to consider the filing as a reply memorandum in support of Plaintiff's motion for a preliminary injunction.   Defendants filed a Memorandum in Opposition to Plaintiff's Emergency Motion for Expedited Hearing and Emergency Motion for Injunction or

Stay on November 3, 2021.   (ECF No. 22).   In Plaintiff's "Reply to Defendants' Answer of Complaint and Request for Injunction to Cease Merger Activities as Ordered by Douglas J. McCarron and the UBC," Plaintiff does address some of the arguments Defendants make in their Memorandum in Opposition.   Plaintiff's Reply to Defendants' Answer, however, was not filed until December 23, 2021, more than fifty days after Defendants' Memorandum in Opposition.   To the extent Plaintiff's Reply to Defendants' Answer is a reply memorandum in support of his motion for an injunction, the document was filed out of time.

Local Rule 4.01(C) provides, "Within ten (10) days after being served with a memorandum in opposition, the moving party may file a reply memorandum.   Additional memoranda may be filed by either party only with leave of Court."[4]   L.R. 4.01(C).   To the extent Plaintiff's Reply to Defendants' Answer is a reply memorandum in support of his motion for a preliminary injunction, Plaintiff did not seek leave of Court to file the document out of time, and none was granted.   The Court strikes Plaintiff's reply to an answer for filing error.

## II.   PLAINTIFF'S MOTIONS FOR AN INJUNCTION

The Court now turns to Plaintiff's motions requesting that the Court enter an injunction against Defendants McCarron and the UBC to prevent or stay the merger between STLKCCRC and the Chicago Region.

---

[4]The Court recognizes Plaintiff is proceeding in this matter without the assistance of counsel.   The Eighth Circuit Court of Appeals has stated that a pro se litigant is not excused from complying with court orders or substantive and procedural law, "even without affirmative notice of the application of the rules to his case."   Bennett v. Dr Pepper/Seven Up, Inc., 295 F.3d 805, 808 (8th Cir. 2002); see also Carman v. Treat, 7 F.3d 1379, 1381 (8th Cir. 1993) (affirming dismissal of case as a sanction for pro se litigant violating Rule 11 by filing a motion that was not grounded in fact).   Plaintiff's "status as a pro se litigant [does] not excuse [him] from following the local rules."   Bunch v. Univ. of Ark. Bd. of Trustees, 863 F.3d 1062, 1067 (8th Cir. 2017).

## A.   Threshold Considerations

As an initial matter, Plaintiff asserts in his Complaint that he is bringing suit on behalf of STLKCCRC and its members.   Plaintiff, however, is proceeding pro se without the assistance of counsel.   While federal law authorizes a plaintiff to plead his own case personally, he cannot represent another person or entity in court.   Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("because pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him."); Knoefler v. United Bank of Bismarck, 20 F.3d 347, 348 (8th Cir. 1994) (a nonlawyer has no right to represent another entity in a court of the United States); Lewis v. Lenc-Smith Mfg. Co., 784 F.2d 829, 830 (7th Cir. 1986) (stating that a person who is not licensed to practice law may not represent another individual in federal court).   And, under Missouri law, a non-attorney representing another person in court is engaged the unauthorized practice of law, which can carry criminal penalties. See Mo. Rev. Stat. § 484.020.1 (2010).   Plaintiff may not engage in the practice of law on behalf of others.[5] See Jones ex rel. Jones v. Corr. Med. Servs., Inc., 401 F.3d 950, 952 (8th Cir. 2005); Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 857 (8th Cir. 1996); Knoefler, 20 F.3d at 348; United States v. Van Stelton, 988 F.2d 70, 70 (8th Cir. 1993).   Plaintiff cannot seek relief on behalf of other members or the STLKCCRC as a pro se litigant.   The Court will only consider claims that are personal to Plaintiff.

Second, in filing his motions for an injunction and hearing, Plaintiff has not complied with the local rules of this Court.   Pursuant to Local Rule 4.01, a movant must support his request for

---

[5]Plaintiff has brought suit in this district on behalf of STLKCCRC in the past, represented by counsel.   See Gould v. Bond, No. 4:19 CV 925 DDN, 2019 WL 3890776, at *1 (E.D. Mo. Aug. 19, 2019), aff'd sub nom. Gould on behalf of St. Louis - Kansas City Carpenters Reg'l Council v. Bond, 1 F.4th 583 (8th Cir. 2021).

relief with a memorandum citing to relevant legal authorities.   With his Complaint, Plaintiff filed a "Memorandum to Clerk," which was docketed as a motion for preliminary injunction, in which he asked for an emergency injunction to block the merger.   (ECF No. 2).   Plaintiff did not file a legal memorandum in support of his motion or provide any legal authority to support his request for relief within the motion.   Plaintiff filed a motion for expedited hearing and an "Emergency Motion for Injunction or Stay" (ECF Nos. 4 and 17), and again did not file memoranda in support of these motions or cited to legal authority within the motions.

To some degree, pro se filings are held to a different standard than those filed by attorneys. The Court is to liberally construe complaints filed by laypeople.   Estelle v. Gamble, 429 U.S. 97, 106 (1976).   This means that "if the essence of an allegation is discernible," the Court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."   Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015) (quoting Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)).   Although Plaintiff has neither complied with the Local Rules nor explicitly stated that he is seeking a preliminary injunction, the Court will construe Plaintiff's requests as motions for a preliminary injunction.

**B.    Legal Standard**

Preliminary injunctive relief is an extraordinary remedy, the purpose of which "is preserve the status quo until, upon final hearing, a court may grant full, effective relief."   Kansas City S. Trans. Co., Inc. v. Teamsters Loc. Union # 41, 126 F.3d 1059, 1066 (8th Cir. 1997) (citations omitted).   A preliminary injunction is not granted as a matter of right, and the plaintiff has the burden of proving that an injunction should be issued.   See Mgmt. Registry, Inc. v. A.W. Companies, Inc., 920 F.3d 1181, 1183 (8th Cir. 2019).

16

In determining whether to issue a preliminary injunction, the Court considers the following four factors: (1) the likelihood the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest.   Kroupa v. Nielsen, 731 F.3d 813, 818 (8th Cir. 2013); see also Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase Sys., 640 F.2d at 113.

### 1.      Plaintiff is not likely to succeed on the merits

Plaintiff has not established that he is likely to succeed on the merits.   As stated above, Plaintiff's Complaint and motions are filed pro se, and from these filings it is not entirely clear under what legal authority he is seeking an injunction.   In his Complaint, Plaintiff describes various conduct by Defendants McCarron and the UBC, and lists the LMRA, in general, and several sections of the LMRDA, including 29 U.S.C. §§ 411(4), 412, 431(c), 436, 461, 462, 464, 501, and 521.   Plaintiff does not, however, connect the dots.   In his Complaint, Plaintiff does not allege or explain how the Defendants' alleged conduct is causally connected to a violation under the LMRA or LMRDA, or what authority would allow this Court to grant him the relief he seeks. Plaintiff's motions for an injunction and emergency hearing do not clarify matters, as they are devoid of any law.

While this Court must liberally construe pro se filings, it is not the role of the Court to advocate for a pro se litigant.   The Court will not construct a legal theory for plaintiff or assume facts he has not alleged.   See Stone, 364 F.3d at 914-15 (refusing to supply additional facts or to construct a legal theory for the pro se plaintiff that assumed facts which had not been pleaded);

17

*Manning v. St. Louis Cnty. Dep't of Just. Servs.*, No. 4:18-CV-874-SNLJ, 2018 WL 3643557, at

*3 (E.D. Mo. Aug. 1, 2018) (declining to pore through claims and exhibits looking for legal claims

for relief).   As the Court is unaware of any legal theory that would allow for an individual union

member to enjoin a merger between two regional councils within a labor organization, and Plaintiff

has presented none, the Court finds Plaintiff has failed to show that he is likely to succeed on the

merits.

Defendants argue that Plaintiff is unlikely to succeed on the merits because courts around

the country have consistently upheld a labor organization's ability to merge subordinate bodies

under the labor organization's constitution.[6]   (ECF No. 22 at 7-13).   Specially, a number of courts

have addressed mergers and dissolutions within the UBC and found that Section 6-A of the

Constitution of the UBC and Rules for Subordinate Bodies under its Jurisdiction ("UBC

Constitution") grants the General President broad discretion to restructure, merge, or dissolve

subordinate bodies, such as region councils and locals.[7]   None found the decision to merge a

---

[6]Defendants also argue Plaintiff is not entitled to the relief he seeks because he failed to exhaust internal union remedies.   Defendants' argument appears to be well founded, as the exhaustion requirement applies to both § 301 of the LMRA, 29 U.S.C. § 185, and § 101 of the LMRDA, 29 U.S.C. § 411, to the extent Plaintiff is seeking an injunction under one or both of these statutes.   *McPhetridge v. IBEW, Loc. Union No. 53*, 578 F.3d 886, 889 (8th Cir. 2009) (requiring exhausting under the LMRDA); *Miner v. Loc. 373*, 513 F.3d 854, 864 n.7 (8th Cir. 2008) ("It is settled that to bring an action under Section 301(a) an employee first must exhaust any exclusive grievance and arbitration procedures[.]") (citing *Smegal v. Gateway Foods of Minneapolis, Inc.*, 763 F.2d 354, 358-59 (8th Cir. 1985)).   Defendants have not, however, moved for the dismissal of Plaintiff's claims under Rule 12 of the Federal Rules of Civil Procedure based on Plaintiff's failure to exhaust his claims.

[7]Section 6-A of the UBC Constitution states, "The [UBC] is empowered, upon agreement of the Local Unions and Councils directly affected, or in the discretion of the General President subject to appeal to the General Executive Board, where the General President finds that it is in the best interests of the United Brotherhood and its members, locally or at large, to establish or dissolve any Local Union or Council, to merge or consolidate Local Unions or Councils[.]"   (ECF No. 22, Ex. 2 at 4-5).

18

regional council violates § 301 of LMRA or any provision of the LMRDA.   See, e.g., United Bhd. of Carpenters & Joiners of Am., Dresden Loc. No. 267 v. United Bhd. of Carpenters & Joiners of Am., S. Cent. Ohio Dist. Council, 992 F.2d 1418, 1421 (6th Cir. 1993) (finding UBC's decision to dissolve and merge district councils did not violate § 301 of the LMRA or the LMRDA; the court affirmed judgment against the local); Loc. 1052 of United Bhd. of Carpenters & Joiners of Am. v. Los Angeles Cnty. Dist. Council of Carpenters, 944 F.2d 610, 612 (9th Cir. 1991) (same); Loc. No. 48, United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am., 920 F.2d 1047, 1051 (1st Cir. 1990) (finding decision to merge locals did not violate § 301 of the LMRA or the LMRDA); Cloke v. United Bhd. of Carpenters & Joiners of Am., No. 1:11-CV-677, 2013 WL 594462, at *1 (S.D. Ohio Feb. 15, 2013), report and recommendation adopted sub nom. Cloke v. Yeggy, No. 1:11-CV-677, 2013 WL 1281631 (S.D. Ohio Mar. 27, 2013), aff'd (Jan. 13, 2014) (finding union member failed to state a claim under the LMRA or the LMRDA against the UBC and union officials based on the decision to merge regional councils and locals); Loc. Unions 20, 135, 257, 296, 531, 740, 902, 1456 of United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am., No. 97 CIV 5538 (CSH), 1997 WL 630179, at *1 (S.D.N.Y. Oct. 9, 1997), aff'd sub nom. Loc. Unions 20, 135, 257, 740, 902 & 1456 of United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am., 131 F.3d 131 (2d Cir. 1997) (denying locals' motion for a preliminary injunction to prevent implementation of UBC's restructuring plan).

The Eighth Circuit has not specifically addressed the UBC's authority to restructure its subordinate bodies under the UBC Constitution, but it has addressed whether a labor organization's decision to merge two locals was proper under a union's constitution.   See Loc. 37, Sheet Metal Workers' Int'l Ass'n v. Sheet Metal Workers' Int'l Ass'n, AFL-CIO, 655 F.2d

19

892, 896 (8th Cir. 1981).   In <u>Local 37</u>, the Eighth Circuit found that a labor organization decision to merge two local was allowed under the language of the union's constitution.   <u>Id.</u> at 897.   The court further found that the merger was not a disciplinary action against the members within the meaning of § 411(a)(5) of the LMRDA, because although the local was no longer an autonomous division, its members' "basic rights as union members were preserved by [the] merger order and its implementation."   <u>Id.</u> at 897-98 (citing 29 U.S.C. § 411(a)(5)).

In this case, Plaintiff has not alleged how the merger violates the terms of the UBC's Constitution.   The Court agrees with other courts which have found that the General President has broad discretion under Section 6-A of the UBC's Constitution to merge regional councils and locals.   <u>United Bhd. of Carpenters & Joiners of Am., Dresden Loc. No. 267</u>, 992 F.2d at 1421; <u>Loc. 1052 of United Bhd. of Carpenters & Joiners of Am.</u>, 944 F.2d at 612; <u>Loc. No. 48, United Bhd. of Carpenters & Joiners of Am.</u>, 920 F.2d at 1051; <u>Cloke</u>, 2013 WL 594462, at *1; <u>Loc. Unions 20, 135, 257, 296, 531, 740, 902, 1456 of United Bhd. of Carpenters & Joiners of Am.</u>, 1997 WL 630179, at *1.   In his declaration, Defendant McCarron states that he made the decision to merge STLKCCRC with the Chicago Region after it came to his attention, through an anonymous complaint and preliminary investigation, that the region was not functioning properly. (ECF No. 22, Ex. 1 at 2-3).   Defendant McCarron states that he made the determination it would be in the best interest of the UBC and its members to dissolve the STLKCCRC and merge it with the Chicago Region.   Defendant McCarron also states he directed that the rights of the STLKCCRC members, including their right to vote, run for office, nominate candidates, and participate in meetings, would be preserved.   (<u>Id.</u> at 3-5).

It is apparent Plaintiff strongly disagrees with the merger decision, but he has not alleged that the merger was done contrary to the language of the UBC Constitution. <u>Loc. 37, Sheet Metal</u>

20

Workers' Int'l. Ass'n, 655 F.2d at 897.   Furthermore, while Plaintiff summarily asserts that members of the STLKCCRC have lost their identity and are being punished, he has not identified any basic right the members have lost as a result of the merger, such as the "(1) right to vote, (2) right to hold elected office, (3) right to acquire job opportunities, (4) right to participate in welfare and pension funds, (5) right to share in the assets of the disappearing local, and (6) whether they have the same rights under the collective bargaining agreements before and after the merger, consolidation or revocation." Id. at 897.   Plaintiff has not allege facts sufficient to show that the merger was in violation of § 301 of the LMRA, or that it was a disciplinary action under § 411(a)(5) of the LMRDA.   Id. at 898.

While the Court has found no case entering an injunction, several courts have stated they might enjoin a merger, even if it complied with the union's constitution, "if bad faith were established." Loc. No. 48, United Bhd. of Carpenters & Joiners of Am., 920 F.2d at 1053 n.5 (citing Loc. Union No. 657 of United Bhd. of Carpenters & Joiners of Am. of Sheboygan Cnty. v. Sidell, 552 F.2d 1250, 1256 (7th Cir. 1977)).   See also United Bhd. of Carpenters & Joiners of Am., Dresden Loc. No. 267, 992 F.2d at 1421; Loc. 1052 of United Bhd. of Carpenters & Joiners of Am., 944 F.2d at 612.   In his filings, Plaintiff raises a number of serious allegations against Al Bond, and he asserts the Defendants are using the merger, as opposed to a trusteeship, to cover up crimes and other malfeasance.   (ECF No. 2 at 1).   According to Plaintiff, "By ordering financial accounts transferred to the [Chicago Region], [Defendant] McCarron is purposely hindering the members['] right to a formal report from his office, forensic accou[n]ting, [and] internal union charges."   (ECF No. 2 at 1).   He also asserts that the merger will hamper an investigation by the FBI, and numerous individuals may go unpunished.   (ECF No. 1 at 8-9).

It is apparent from his filings that Plaintiff is passionate about the events and what has transpired at the STLKCCRC, but he has presented no relevant, admissible evidence to support his allegations that Defendants have undertaken the merger in bad faith.   Plaintiff's Complaint and motions for an injunction are based on speculation, which Plaintiff himself acknowledges. Plaintiff asserts in his Complaint, that when the UBC took over the STLKCCRC following receipt of the anonymous letter, they were originally committed to a trusteeship.   (ECF No. 1 at 8). "[W]hat lead [sic] them to change course [and order a merger] is anyone's guess."   (ECF No. 1 at 8).   Defendant McCarron states in his declaration that he ordered the merger because he believed it was "in the best interest of the UBC and the membership, including to ensure better oversight, reduce costs, maximize resources, and increase market competitiveness."   (ECF No. 22 at 1).   At this juncture, Plaintiff has presented no admissible evidence to refute this assertion.

In sum, the Court finds Plaintiff has not shown that he is likely to succeed on the merits, such that the entry of a preliminary injunction would be proper in this case.   Setting aside that it is not clear from the Complaint or Plaintiff's motions under what statutory provision(s) he is seeking an injunction, or whether as an individual member proceeding pro se has legal authority to pursue such an extraordinary remedy, Plaintiff has not alleged facts to show that the Defendants' actions violate or are contrary to the UBC's Constitution such that he would be entitled to relief under § 301 of the LMRA.   The Court agrees with other courts which have found that the General President of the UBC is granted wide discretion under § 6-A of the UBC Constitution to order mergers of regional councils and locals.   Plaintiff also has not alleged facts to show that the merger was a disciplinary action against the members of the STLKCCRC within the meaning of § 411(a)(5) of the LMRDA.   Finally, while Plaintiff alleges the merger was done to cover up evidence of malfeasance by Al Bond and other members of UBC's leadership, he has presented

22

no relevant, admissible evidence to support his theory.   Plaintiff has not allege fact to show that the merger was undertaken in bad faith.

### 2.   Plaintiff has not shown he will experience irreparable harm

Plaintiff also fails to show he will experience irreparable harm if an injunction is not issued. Irreparable harm occurs "when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).   Possible or speculative harm is not enough, but rather the plaintiff must show a significant risk of harm exists.   See Johnson v. Bd. of Police Comm'rs, 351 F. Supp. 2d 929, 945 (E.D. Mo. 2004).   In other words, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist., 696 F.3d 771, 778 (8th Cir. 2012).

Plaintiff has not established that there is a significant risk of harm to Plaintiff personally that cannot be fully compensated through an award of damages.   When explaining why monetary damages at a later time would not adequately address his injury, Plaintiff writes in his Complaint, "We do not seek monetary damages, only the ability to keep STLKCCRC funds from the UBC and the Chicago Council.   Specifically, until forensic accounting can take place."   (ECF No. 1 at 10).   According to Plaintiff, "by ordering financial accounts transferred to the [Chicago Region], [Defendant] McCarron is purposely hindering the members' right to a former report from his office, forensic account, [and] internal union charges."   (ECF No. 2 at 1).   Plaintiff alleges Defendant McCarron failed to make a complete report to STLKCCRC members following the seizure.   He asserts that STLKCCRC funds should be kept from the Chicago Region until a forensic accounting can take place.

To the extent Plaintiff would be entitled to a financial accounting of STLKCCRC funds, Plaintiff has presented no evidence to show that an accounting could not be completed following a merger.   There is also nothing to suggest that Al Bond and other individuals who were in leadership roles in STLKCCRC could not be held accountable for alleged misconduct on account of the merger.   As for Plaintiff's assertion that the merger will hinder an ongoing federal investigation, Plaintiff has not alleged facts to show how this would cause him irreparable harm, and the allegation is merely speculative.   There is no evidence that the federal investigation, to the extent there is one, could not continue due to the merger.    Therefore, the Court finds Plaintiff has failed to demonstrate that there is threat of irreparable harm to Plaintiff personally.   Plaintiff has not shown that without the entry of an injunction, he is facing certain and immediate harm that cannot be compensated with money damages.   S.J.W. ex rel. Wilson, 696 F.3d at 778.

As Plaintiff fails to show that he is likely to succeed on the merits or that he will experience irreparable harm if an injunction is not entered, the Court need not address the other three Dataphase factors.   Plaintiff's motions for the entry of a preliminary injunction blocking the merger between STLKCCRC and the Chicago Region are denied.

Accordingly,

**IT IS HEREBY ORDERED** that Jonathan M. Gould's "Memorandum to Clerk," and "Emergency Motion for Injunction or Stay," which the Court construes as motions for a preliminary injunction, Motion for Expedited Hearing, Motion Objecting to Extension of Time, Motion to Disqualify Attorneys Robert D. Blitz and Aaron W. Sanders, Motion for the Court to Amend its December 2, 2021 Order pursuant to Rule 59, Motion to Disqualify Attorney Brian F. Quinn, and Motion to Disqualify Judge Ronnie L. White under 28 U.S.C. § 455 are **DENIED.** (ECF Nos. 2, 4, 15, 17, 18, 24 and 29).

24

**IT IS FURTHER ORDERED** that Jonathan M. Gould's Motion Objecting to Extension of Time is **DENIED as moot.**   (ECF No. 14).

**IT IS FURTHER ORDERED** that Defendants United Brotherhood of Carpenters and Joiners of America and Douglas J. McCarron's Motion to Strike Plaintiff's Reply to Defendants' Answer is **GRANTED** (ECF No. 32) and the Reply is **STRICKEN**.   The Clerk of Court shall remove from the record Plaintiff Jonathan M. Gould's Reply to Defendants' Answer of Complaint and Request for Injunction to Cease Merger Activities as Ordered by Douglas J. McCarron and the UBC. (ECF No. 30).

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this  _28th_  day of April, 2022.